Francis O. Scarpulla (41059)
Judith A. Zahid (215418)
Patrick B. Clayton (240191)
Zelle Hofmann Voelbel & Mason LLP
44 Montgomery Street, Suite 3400
San Francisco, CA  94104
Telephone:  415-693-0700
Facsimile:  415-693-0770
Email:      fscarpulla@zelle.com
            jzahid@zelle.com
            pclayton@zelle.com

Jonathan Shub (237708)
Scott A. George *(Pro Hac Vice Appl. To Be Filed)*
Seeger Weiss LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Telephone: 215-564-2300
Facsimile:  215-851-8029
Email:      jshub@seegerweiss.com
            sgeorge@seegerweiss.com

Attorneys for Plaintiff and the proposed class

[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Stacey Pierce-Nunes, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Toshiba America Information Systems, Inc.,<br><br>Defendant. | CASE NO. _____<br><br>**COMPLAINT**<br><br>**Demand for Jury Trial** |

Stacy Pierce-Nunes ("Plaintiff"), by and through Plaintiff's undersigned attorneys, on behalf of herself as well as the proposed class (defined *infra*), demanding trial by jury of all claims properly triable thereby, makes the following allegations and claims against Toshiba America Information Systems, Inc. ("Toshiba" or "Defendant").

## JURISDICTION

1.      This Court has jurisdiction over all causes of action asserted herein pursuant to the Class Action Fairness Act.  28 U.S.C. § 1332(d).

## PRELIMINARY STATEMENT

2.      This action is brought by Plaintiff, on behalf of Plaintiff and the proposed class, to recover damages and restitution in connection with the purchase of Toshiba-brand televisions that were falsely marketed and advertised by Toshiba as "LED TVs," "LED HDTVs" or "LED televisions."  Plaintiff and the proposed class also seek an injunction (a) requiring Toshiba to engage in a corrective advertising campaign to alert consumers in New York as to the true nature of these televisions, (b) prohibiting Toshiba from continuing falsely to market and advertise such televisions in New York as "LED TVs," "LED HDTVs," or "LED televisions", and (c) requiring Toshiba to recall and re-label all such televisions that have already been distributed to New York for re-sale in that State, but not yet sold to retail customers in New York.

3.      The televisions at issue are not "LED TVs," but instead are **LCD** TVs that use light emitting diodes (LEDs) instead of cold cathode fluorescent lights (CCFLs) to light the liquid crystal display (LCD) panel that is present in each of the televisions at issue.

4.      Toshiba's failure to disclose that its references to LED refer to the light source that illuminates the LCD panel, **instead of the display technology itself,** and its nondisclosure and concealment that each of the televisions is otherwise functionally identical to televisions that are advertised and sold as "LCD TVs," were at all times knowing, intentional, and intended to mislead consumers.  Toshiba's false and misleading marketing and advertising were and are designed

5856160.2

1    falsely to suggest that the televisions at issue are not LCD TVs at all, but an entirely different,

2    improved, and technologically advanced class or species of television.  This is false; all of these

3    televisions are LCD TVs.

4              5.       Toshiba has used and continues to use this deception (a) to induce customers to

5    purchase Toshiba's so-called LED TVs in the mistaken belief that they are upgrading from their

6    existing CCFL-lit LCD TVs, (b) to charge a premium for such televisions that Plaintiff and other

7    consumers would not have paid had the televisions been accurately labeled and described, and (c)

8    to capture sales from other brand televisions that were accurately labeled as LED-lit LCD TVs.

9              6.       Toshiba has perpetrated a massive consumer fraud upon thousands of unsuspecting

10   purchasers, each of whom paid an unsupported premium for a deceptively labeled "LED TV," and

11   on whose behalf Plaintiff brings this action to recover such premium and for other appropriate

12   relief.

13

14                                              **PARTIES**

15            7.       Plaintiff Stacey Pierce-Nunes is a citizen of New York, and purchased a Toshiba-

16   brand 50L5200U model "LED TV" for personal use and not for resale.  When Plaintiff was

17   considering purchasing this television, there were three flat panel television options widely

18   advertised in the market at large – "Plasma TVs," "LCD TVs" and "LED TVs."  Plaintiff

19   considered models that were advertised as "LED TVs" as well as models that were advertised as

20   "LCD TVs."  Plaintiff selected Toshiba's "LED TV" model, even though it was priced higher than

21   comparable model "LCD TVs" offered for sale, because of Toshiba's marketing assertions on the

22   carton containing the television that it was an "LED TV," as opposed to an "LCD TV."

23            8.       Toshiba is a California corporation with its principal place of business located in

24   Irvine, California.  Toshiba distributes and markets and directs the marketing of so called "LED

25   TVs" within this district, the State of California, and throughout the United States.

26

27

28

                                                 3                    CASE NO. _____
                                            **COMPLAINT**

5856160.2

**STATEMENT OF FACTS**

**TELEVISION OWNERSHIP AND SALES STATISTICS**

9.      Televisions are ubiquitous in our society.  The Nielsen Company, a world-renowned expert in the field of television viewership, reported in 2012 that 97.1% of all U.S. households owned a television, and 84.4% owned more than one.  According to the same report, in 2012, U.S. households were more likely to own a television than a cell phone (87.3%), DVD player (86.7%), or personal computer (80.9%).

10.      While the TV household penetration rate in the U.S. has been high for decades – exceeding 90% since 1965 – rapid advances in display technology (including the introduction of so-called flat panel televisions), the dramatic expansion of non-broadcast "cable" and "satellite" channels and providers, price competition, and the Congressional mandate that all full power television broadcasters (like ABC, NBC, and CBS) broadcast exclusively in digital format starting on June 13, 2009, have led many, and perhaps most, U.S. households to purchase at least one television, and often several units, within the past few years alone.

11.      Industry statistics bear out this phenomenon.  In February 2008, 25.1% of all U.S households were HD Display Capable – meaning that they were "equipped with an HD television that [was] capable of displaying HD content."  (HD or high definition content refers to the resolution of the screen image.  HDTVs produce a resolution or level of detail that is much greater than standard definition televisions.)  By May 2012, however, the number of U.S. households that were HD Display Capable had increased to 75.5%.  Non-HD televisions cannot be converted into HD televisions.  In order for the penetration rate to have tripled, 50% of all U.S. households (or approximately 57,000,000 households based on U.S. Bureau of Statistics figures) had to buy at least one new television unit in that approximately 4-year period.

12.      Industry statistics show:

        a)        In 2009, television manufacturers shipped over 35,300,000 "flat panel"
                  (Plasma or LCD) television units for sale in the United States.

        b)        In 2010, television manufacturers shipped over 38,600,000 "flat panel"

---

4                         CASE NO. _____

**COMPLAINT**

1    (Plasma or LCD) television units for sale in the United States.

2    c)    In 2011, television manufacturers shipped almost 40,000,000 "flat panel"

3          (Plasma or LCD) television units for sale in the United States.

4    d)    In 2012, television manufacturers shipped over 37,600,000 "flat panel"

5          (Plasma or LCD) television units for sale in the United States.

6          Total revenue from 2012 sales exceeded $28 billion.

7    e)    While final figures were not yet accessible as of filing, in 2013, television

8          manufacturers were forecast to ship over 36,600,000 "flat panel" (Plasma or

9          LCD) television units for sale in the United States.  Total revenue from

10         2013 sales was projected to exceed $28 billion.

11    13.    As the following industry chart makes clear, globally, LCD TVs comprise the

12   overwhelming majority of flat panel sales, and LED-lit LCD TVs now comprise the

13   overwhelming majority of "LCD TV" sales:



23    14.    Although LED-lit LCD TVs were introduced to the mass market in or about 2008,

24   this technology has quickly come to dominate U.S. LCD TV unit sales, as the following statistics

25   demonstrate:

26    a)    In 2009, approximately 3% of all LCD TV units sold in the US (volume,

27          not dollar value), used LED backlighting.

28

5

CASE NO. _____

**COMPLAINT**

5856160.2

b)      In 2010, approximately 22% of all LCD TV units sold in the US (volume, not dollar value), used LED backlighting.

c)      In 2011, approximately 45% of all LCD TV units sold in the US (volume, not dollar value), used LED backlighting.

d)      In 2012, approximately 51% of all LCD TV units sold in the US (volume, not dollar value), used LED backlighting.

e)      In 2013, approximately 84% of all LCD TV units sold in the US (volume, not dollar value), were projected to use LED backlighting.

**TOSHIBA'S MARKET SHARE**

15.     Toshiba is a world-renown electronics manufacturer and a significant player in the U.S. television market.  In the time period 2009 to 2013, and variable by quarter, Toshiba's market share in the U.S. LCD TV segment has fluctuated from about 5% to about 8%.

16.     Toshiba's acquisition and maintenance of its share of the U.S. television market for LCD TVs is due, in part, to the false advertising described herein.

**TELEVISION DISPLAY TECHNOLOGIES**

<u>CRT Televisions and Analog Rear Projection Televisions</u>

17.     From virtually its earliest beginnings until the late 1990s, direct view CRT-technology (cathode ray tubes) dominated the United States television market.  These were the boxy televisions of old, and were sold to consumers in a variety of screen sizes, up to a maximum of 37" (measured diagonally).

18.     In a cathode ray tube television, a filament is placed inside a vacuum glass tube. When the filament (cathode) is activated by electricity, it generates electrons, which fall off the heated filament into the vacuum.  A focusing anode attracts the electrons and focuses them into a tight beam or "ray," which is then accelerated.  The tight, now high-speed electrons travel through the vacuum in the tube and strike the flat glass screen at the other end of the tube – which is the

5856160.2

1  back of the television's outward facing screen.  The back of the screen is coated with phosphor,

2  which glows when struck by the electron beam.

3      19.    A phosphor is any material that, when exposed to radiation (like the electron

4  beam), emits visible light.  In a black and white CRT TV, there is one phosphor that glows white

5  when struck.  In a color screen, there are three phosphors arranged as dots or stripes, so as to emit

6  red, green, and blue light when struck by the ray.

7      20.    CRT TVs were for decades the only televisions consumers could purchase.

8      21.    Exemplar images of CRT televisions follow:

  

17      22.    CRT TVs, moreover, have a built in size limitation.  The size of the screen is

18  proportional to the size of the vacuum tube.  To increase the screen size, one must increase the

19  length of the vacuum tube.  As a result, CRT TVs for the consumer market were generally only

20  available in sizes up to 37" diagonal.

21      23.    Consumers who wanted a larger screen image were forced to purchase analog

22  projection televisions.  Analog projection televisions of this era also used vacuum tube technology

23  to generate the screen image.

24      24.    Exemplar images of analog projection televisions follow:

7

CASE NO. _____

**COMPLAINT**

5856160.2

 

Plasma Televisions

25.     In or about the early 2000s, television manufacturers began introducing flat panel, plasma display televisions ("Plasma TVs") to the mainstream consumer market.  The introduction of Plasma TVs, which were thin and light enough to be mounted directly on a wall, revolutionized the television industry.

26.     Plasma TVs use plasma displays, which are composed of millions of small cells, or pixels, containing electrically charged ionized gases, to generate the screen image.  When the television is turned off, the ions and electrons in the gas or "plasma" are equally balanced, the atom is stable, and the pixel is dark.  When electricity is introduced, however, the atoms become unstable and electrons and particles within the plasma begin to collide, releasing photons of ultraviolet energy.

27.     Each pixel within the plasma display is made up of three separate subpixel cells with different colored phosphors – one red, one blue, and one green.  As discussed above, in the context of CRT TVs, phosphors produce light photons – they glow – when struck by energy.  The phosphors in the Plasma TVs are activated by the ultraviolet photons, which can be varied in number by pixel and subpixel.  The amount of electricity applied to the subpixel determines the

CASE NO. _____

**COMPLAINT**

number of ultraviolet photons generated, and thus the color intensity the subpixel generates, which combines with the primary colors generated by the other two subpixels to determine the color displayed on the screen by the pixel.  All of the pixels acting together generate the screen image. Exemplar graphical depictions of the image generating process for a plasma display are set forth below:



28.      The pixels used in plasma displays do not require a separate light source; the image and all of the colors are generated by the interaction between the electrically charged ionized gases and the phosphor in the cells.

29.      A generic image of a Plasma TV is set forth below:

**COMPLAINT**

CASE NO. _____

5856160.2

LCD Televisions

30.     In the early to mid-2000s, television manufacturers began introducing flat panel, liquid crystal display televisions ("LCD TVs") to compete with Plasma TVs (and to a lesser degree other available alternative technologies, e.g., CRT).  While flat, reasonably light, and wall-mountable like Plasma TVs, LCD TVs utilize a fundamentally different display technology – liquid crystal displays ("LCD").

31.     To form a liquid crystal display or LCD, a very thin layer of a liquid crystalline substance is sandwiched between two substrates, which are sheets of glass or plastic to which a grid of electrodes has been applied.  A vertical polarizing film is applied to the LCD's rear substrate.  Patterned red, green and blue color filters and a horizontal polarizing film are applied to the front substrate.  The liquid crystals are rod-shaped polymers that are neither solid nor liquid and, when subject to an electric current, will align in a predictable manner.  In an LCD TV, the liquid crystal display (or LCD) is then lit by a separate source of light (the "light source") because, unlike plasma displays, liquid crystals do not emit light themselves.

5856160.2

32.     An LCD TV generates screen images by controlling the amount of light from the light source that passes through the LCD and strikes the color filters.  In very simple terms, the LCD is comprised of millions of tiny liquid crystal "shutters" that allow or block the passage of light depending on the intensity of the electric current being applied.  Each of these liquid crystal "shutters" corresponds to a tiny rectangular red, green, or blue filter or sub-pixel that is mounted to the front substrate (the surface closest to the television's glass screen).  As with plasma displays, three sub-pixels – one red, one green, and one blue – comprise a single pixel, and a "Full HD" or high definition television will contain more than 2 million pixels (1920 pixels horizontally multiplied by 1080 pixels vertically).  The amount of light that passes through each liquid crystal "shutter" determines the intensity of the red, green, or blue color that the corresponding subpixel generates.  The interaction of the trio of subpixels (for each pixel) determines the color that is displayed on the screen for that pixel.  All of the pixels together generate the screen image. Exemplar graphical depictions of the image generating process for a liquid crystal display are set forth below:




CASE NO. _____
**COMPLAINT**

5856160.2

33.     LCD technology is light source neutral: *i.e.*, **any** white light source can be used to light and thus generate the screen image, a fact that has been widely known throughout the manufacturing industry since the introduction of this technology.

34.     Initially, and for quite a number of years, all manufacturers of LCD TVs primarily used cold cathode fluorescent lights (CCFLs) as the source light.   A picture of a generic CCFL light source of the type used in LCD TVs follows:



35.     Television manufacturers, however, continued to experiment with and market LCD TVs with other light sources, including LEDs, throughout this period.  For example, in 2004, Sony introduced the Sony Qualia 005.  The Sony Qualia 005 used an array of light emitting diodes to illuminate the LCD panel.  The introduction of a different light source did **not** change the manner in which LCD panels and LCD TVs generate the screen image described above.  A picture of a generic LED light source of the type used in LED-lit LCD TVs follows:



5856160.2

36.     Soon after their introduction, LED-lit LCD TVs proliferated, with multiple manufacturers using light emitting diodes, instead of CCFLs, to the light the liquid crystal display. Some of these devices place the LEDs behind the liquid crystal display (back- or direct-lit), while others place the LEDs on the edge of the liquid crystal display (edge lit).  But all of these televisions—regardless of the light source—employ a liquid crystal display of LCD screen to generate the TV picture.

37.     Toshiba introduced its first LCD TVs with an LED light source in the Summer of of 2009 (i.e., the Regza SV670), and followed with additional models and generations of LED-lit LCD TVs generation series in subsequent years.  Initially, LED-lit LCD TVs represented only a small fraction of Toshiba's total LCD TV and other flat panel sales, whereas, at the time of the filing of this complaint, all of the TVs listed on Toshiba's U.S. website are LED-lit LCD TVs.

**MARKETING OF LCD TELEVISIONS**

38.     When liquid crystal display televisions were first introduced into the market, the televisions were universally marketed as "LCD TVs," just as plasma display televisions had been advertised as Plasma TVs.  No effort was made to advertise or designate this product line in reference to the CCFL or other light source used to light the LCD panel.  For example, the Sony Qualia was not advertised as an LED TV, nor were comparable liquid crystal displays using CCFL backlights advertised as CCFL TVs.  This remained true even as LED-lit LCD TVs became cheaper to manufacture and more common in the consumer segment of the market.

39.     Toshiba's initial LED-lit LCD TV units were likewise clearly identified as LCD TVs as the following marketing materials and owner's manual for the Regza SV670 model demonstrate:

5856160.2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



40.     Introduction of LED-lit LCD TVs did not result in the immediate end of CCFL-lit LCD TVs.  To the contrary, LED-lit LCD TVs did not sell well.  Because LED-lit LCD TVs were priced higher than comparable CCFL-lit LCD TVs, consumers continued to purchase CCFL-lit LCD TVs (or Plasma TVs) notwithstanding the alleged benefits of the LED backlighting which Toshiba and other manufacturers trumpeted.

41.     Manufacturers, including Toshiba, continued to manufacture both CCFL and LED-lit LCD TVs, advertising and selling them side by side through the same retail and on-line channels.  While the LED lighting feature was often advertised, at least initially, no effort was made to conceal that these televisions utilized liquid crystal displays and were therefore in fact LCD TVs.  Most early advertising, like the Toshiba materials quoted above, clearly stated that the televisions were LED-lit LCD TVs or otherwise accurately described and disclosed that the television being advertised utilized LCD display technology.  As noted, very few consumers were interested enough to purchase the product, notwithstanding the LED light source.

42.     Within months after it began distributing LED-lit LCD TVs, Toshiba  made the marketing decision that gives rise to this lawsuit:  Toshiba dropped all references to the televisions

5856160.2

being LCD TVs and began marketing the LED-lit LCD TVs as a new, advanced, technologically

superior species of television, a so called LED TV, which was allegedly different from and better

than LCD TVs, even though both species of television use the same liquid crystal displays to

generate the same screen image.  The marketing materials and manual below reflect this shift to

false and misleading marketing and labeling:



**COMPLAINT**

CASE NO. _____

5856160.2

1

2

3

4

5

6

7

8

9

10

11

12

13

14



15

16

17

18

19

20

21

22

23

24

25

26

27

28

17

CASE NO. _____

**COMPLAINT**

5856160.2



CASE NO. _____

**COMPLAINT**

5856160.2

43.     Toshiba's cartons also now prominently referred to the televisions as "LED TVs"; nowhere on the carton did Toshiba say the televisions were "LCD TVs" that used an LED light source or anything similar.  Images of such cartons appear below:

**COMPLAINT**

CASE NO. _____

5856160.2

44.     The result of this deception was both immediate and dramatic:  A product that had previously failed to make any significant inroads into the flat panel television market suddenly became the leader of the industry.  Before the false advertising at issue, CCFL-lit LCD TVs had dominated LCD TV sales in the U.S. with over 97% of sales.  Today, however, as a result of the deceptive advertising, LED-lit LCD TVs now dominate the LCD TV market as well as the overall flat panel television market.

45.     LED-lit LCD TVs are **not** in fact LED TVs.  Although Toshiba has falsely advertised LED-lit LCD TVs as "LED TVs" in a successful effort to increase sales and profits, the fundamental display technology of its flat screen televisions has not changed.  All of these televisions use LCD screens to display their pictures.  These televisions were LCD TVs before Toshiba's false advertising and remain LCD TVs today.  While a few manufacturers have refrained from falsely advertising their televisions as LED TVs, the majority of manufacturers,

5856160.2

including Toshiba, have chosen falsely to advertise their LED-lit LCD TVs as "LED TVs" (or have used similarly deceptive language – *e.g.*, LED HDTV).

46.     The manufacturers that have refrained from this deception, including Sony, RCA, and Hitachi, have seen their market shares fall, while those manufacturers that have engaged in the deception, including Toshiba, have reaped the benefits of increased sales.

47.     Toshiba uses multiple marketing channels to create the appearance of a product category and price point that simply does not exist in the consumer market.  For example, for years, when visiting Toshiba's website, customers were directed to choose between LED TVs, LCD TVs, and Plasma TVs.[1]  A screenshot of Toshiba's website as of January 2, 2012 below illustrates this point:



The LCD category accurately describe the applicable display technology, while the LED category misleadingly identifies only the light source, thus falsely implying that LED, not LCD, is the display technology.  Moreover, when potential purchasers click through to the actual televisions, for the LED TVs there is no reference to their being LCD display televisions.  This is deceptive.

---

[1] Toshiba has discontinued distributing CCFL-lit LCD TVs, although some remain for sale through third party retailers.  As a result, Toshiba's web interface has been updated to eliminate the LCD category altogether.

5856160.2

48.     Toshiba has used circulars, newspaper and magazine advertisements, and point of sale display materials to further its deception.

49.     In the absence of Toshiba's deceptive advertising, Plaintiff and other consumers would instead have purchased a comparable model CCFL LCD TV from Toshiba or another manufacturer at a lower price,  or would have paid less for the falsely marketed and advertised "LED TV" models that they purchased from Toshiba.

50.     Toshiba is fully aware that the televisions at issue are LED-lit LCD TVs, that they do not contain LED displays, and that they are not LED TVs.  Toshiba has falsely advertised the televisions to increase sales and profits.  Toshiba would not have been able to charge the premium it has charged for its "LED TVs" if it had accurately advertised the televisions as LCD TVs or LED-lit LCD TVs.

**LED-LIT LCD TVS ARE NOT LED TVS**

51.     LED-lit LCD TVs are not LED TVs, which employ a fundamentally different technology that is still several years away from availability at prices accessible to mainstream purchasers.  Actual LED TVs use light emitting diode displays instead of the liquid crystal displays or plasma displays described above.  The LED displays in these televisions are self-illuminating; they require **no** independent light source and do **not** contain liquid crystal technology.  Actual LED TVs are currently available for sale, but at prices that only the wealthy can afford; the televisions are far out of the reach of mainstream consumers.

52.     Toshiba does not appear to market a true LED TV, but other manufacturers do.  For example, Samsung's 55" true LED TV, model KN55S9C, currently retails for $8,999.  A similarly sized Samsung LED-lit LCD TV sells for as low as $799 – less than one-tenth the price.   A similarly sized Toshiba LED-lit LCD TV sells for as low as $1049.

53.     As shown, while LED-lit LCD TVs are not LED TVs, various manufacturers, including Toshiba, have deliberately and falsely claimed that such televisions are LED TVs in order to generate sales and charge a price premium for such televisions.

**COMPLAINT**

5856160.2

54.     Commentators have noted the deceptive nature of this marketing and labeling.  For example (all emphasis added):

- "**They are not LED TVs.** Calling them such makes as much sense as calling its existing line of LCD televisions Cold Cathode Fluorescent Lamp TVs, or CCFL TVs, after the lighting technology that they use….[The] decision to drop 'LCD' was a smart marketing move….But it's also confusing consumers."

- "**There is no such thing as an LED TV.** The misleading marketing on this one really annoys me.  All 'LED TVs' are just LCD TVs that use LEDs as their light source."

- "There has been a **lot of hype and confusion** surrounding the introduction of 'LED' Televisions….LED TVs are still LCD TVs.  It is just that these new sets use LED backlights rather than the fluorescent-type backlights used in most other LCD TVs.  In other words, LED TVs should actually be labeled LCD/LED or LED/LCD TVs."

**LED-lit LCD TVs Are Not Inherently Superior to CCFL-lit LCD TVs**

55.     There is nothing about LED-lit LCD TVs that renders them inherently superior (or inferior) to CCFL-lit LCD TVs.  The image that is generated on the television screen is a function of multiple design elements working together, including the quality and specifications (e.g., lumens output; transmissivity) of the LCD polarizers and color filters, light bulb, glass screen, circuity, etc.  The result is a plethora of output specifications (e.g., contrast, refresh rate, color space), which can vary by make and model, but which are not dictated by the mere fact that one television is lit by a CCFL array while the other is lit by LEDs.  CCFL-lit LCD TVs can perform similarly and better than LED-lit TVs, generating equal or greater luminance, equal or better contrast ratio, and equal or better color space coordinates, among other output specifications.

**PRICE PREMIUM**

56.     Toshiba's deceptive marketing practices have allowed it to charge a premium for the LED-lit LCD TVs that it has misrepresented as LED TVs.  While the exact price premium varies by TV size (and other features), and has varied over time, at all times Toshiba's LED-lit LCD TVs have been priced higher than otherwise comparable CCFL-lit LCD TVs.

**PLAINTIFF AND THE PROPOSED CLASS WERE DECEIVED AND INJURED**

57.     Plaintiff and other purchasers of these "LED TVs" were misled into believing that they were purchasing an LED TV, not the LCD TV they actually received, and have suffered damage as a result, in the form of the premium they were deceived into paying.  Plaintiff and the proposed class members had no knowledge that the televisions were in fact LCD TVs, and did not suspect, nor did they have reason to suspect, that the televisions they were purchasing had been falsely and deceptively advertised.

**PLAINTIFFS' RELIANCE AND INJURY**

58.     Plaintiff relied upon Toshiba's false and deceptive representation that the television she was purchasing was an LED TV – which was prominently displayed on the television's carton at the time of purchase.  Plaintiff believed that she was purchasing an LED TV, not the LCD TV that she actually received.  Plaintiff would not have purchased or would have paid less for her television had the television not been falsely and deceptively advertised or had she known the truth.

**<u>CLASS ALLEGATIONS</u>**

59.     This action has been brought, and may be properly maintained, under Federal Rules of Civil Procedure 23(a) (1)-(4) and 23 (b) (2) and (3).

60.     Plaintiff brings this action on behalf of herself and all other members of a class (the "Class") defined as follows:

5856160.2

All persons who purchased, for personal use and not re-sale, within the State of New York, at any time during the applicable limitations period preceding the filing of this Complaint up through any trial of this matter, a Toshiba-brand LED-lit LCD television sold in a box that describes the television as an LED TV, an LED HDTV or an LED television.  Excluded from the Class are Toshiba, and any person or entity related to or affiliated with Toshiba, and any business, person, or entity that purchased such televisions for re-sale (*e.g.*, retailers), any judicial officer assigned to the case, the court staff and jurors, along with their immediate families.

61.     The Class is composed of at least thousands of persons and is sufficiently numerous for class treatment.  Joinder of all Class members individually would be impracticable, and the resolution of the Class's claims in a single action will provide substantial benefits to the parties and the Court.

62.     Plaintiff's claims are typical of the claims of the Class members Plaintiff seeks to represent, and Plaintiff has no interests that are adverse to the interests of the other Class members.

63.     This dispute raises fundamental questions of law and fact that are common to all of the Class members, and that predominate over any individual class member issues that must be resolved to adjudicate this claim, including, but not limited to:

(a)     Whether Toshiba marketed and advertised LED-lit LCD TVs as LED TVs;

(b)     Whether Toshiba intended to mislead the class when it marketed and advertised LED-lit LCD TVs as LED TVs;

(c)     Whether it is false or misleading to describe an LED-lit LCD television as an LED TV; and

(d)     Plaintiff will fairly and adequately protect the interests of the Class.

64.     Plaintiff has retained experienced, qualified counsel to represent the Class.

65.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all of the Class members is impracticable.  Even if Plaintiff and the other Class members could afford individual litigation, the courts could not.  The amount at stake for each Class member is such that individual litigation would be inefficient and cost prohibitive.  Additionally, the adjudication of this controversy through a class action will

5856160.2

1   avoid the possibility of inconsistent and potentially conflicting adjudications of the claims asserted

2   herein.  There will be no difficulty in the management of this action as a class action.

3       66.     This action is certifiable in the alternative under the provisions of Fed. R. Civ.

4   P.  23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the

5   Class members, thereby making appropriate final injunctive relief or corresponding declaratory

6   relief with respect to the Class members as a whole and necessitating that any such relief be

7   extended to the Class members on a mandatory, class-wide basis.

8

9                          **FIRST CAUSE OF ACTION**
10              **Violation of New York General Business Law § 349**

11      67.     Plaintiff incorporates by reference and re-alleges each allegation set forth in

12  paragraphs 1-66 hereinabove.

13      68.     Plaintiff brings this claim on behalf of Plaintiff and the Class.

14      69.     Plaintiff and the members of the class are consumers under New York General

15  Business Law § 349.

16      70.     Toshiba has engaged in deceptive practices related to the sale of its LED-lit LCD

17  TVs by falsely labeling and marketing them as LED TVs.

18      71.     Toshiba's deceptive acts and practices were directed at consumers and were

19  otherwise consumer oriented.

20      72.     Toshiba's false and misleading advertising was disseminated to increase sales and

21  to increase the amount of money that Toshiba could charge for each television that was sold.

22      73.     Toshiba knew or should have known that its advertisements and labeling were false

23  and misleading.

24      74.     Toshiba's unconscionable conduct alleged herein included the omission and

25  concealment of material facts and misrepresentations concerning its LED-lit LCD TVs.

26      75.     Toshiba was in a superior position to know, and actually did know, the true facts

27  about its LED-lit LCD TVs at the time of the sale.

28

                                26                  CASE NO. _____
                            **COMPLAINT**

76.     Toshiba intended that Plaintiff and members of the Class rely on the acts of concealment, omissions, and misrepresentations regarding the nature of LED-lit LCD TVs, so that Plaintiff and members of the Class would purchase said televisions.

77.     If Toshiba had been truthful about the nature of and disclosed all the material information regarding the LED-lit LCD TVs sold to Plaintiff and members of the Class, they would not have purchased said televisions, or would have paid less for them.

78.     Toshiba's deceptive acts and practices were committed in conduct of business, trade, commerce in the state of New York.  Toshiba's conduct was not a unique, one-time occurrence without possibility of replication or recurrence and without implication for the broader consuming public.  To the contrary, the deceptive conduct set forth herein is part of a regular and recurring practice that impacts all of the Class members.

79.     Plaintiff and the Class have suffered harm as a result of these violations because they were misled into believing that they were buying an LED TV, not an LCD TV, and paid a monetary premium for these televisions that they otherwise would not have paid had the televisions been described accurately.  Plaintiffs and the Class have suffered injury in fact and have lost money or property as a result of Toshiba's deception, as alleged herein.

80.     By reason of Toshiba's violation of New York General Business Law § 349, Plaintiff and each member of the Class are entitled to recover the greater of their actual damages or $50 per television purchased, trebeled damages, injunctive relief and their costs and attorneys' fees in filing and prosecuting this action, and such other relief as provided by law.

## SECOND CAUSE OF ACTION
### Violation of New York General Business Law § 350 et seq. (False Advertising)

81.     Plaintiff incorporates by reference and re-alleges each allegation set forth in paragraphs 1-66 hereinabove.

82.     Plaintiff brings this claim on behalf of Plaintiff and the Class.

5856160.2

83.     Toshiba falsely advertised and labeled its LED-lit LCD TVs as LED TVs when they were in fact LCD TVs.  Toshiba did this to increase sales and to increase the amount of money that Toshiba could charge for each television that was sold.

84.     Toshiba was aware at all relevant times that its advertising and labels were false and misleading.

85.     Toshiba's conduct was not a unique, one-time occurrence without possibility of replication or recurrence and without implication for the broader consuming public.  To the contrary, the false advertising and labelling described herein is part of a regular and recurring practice that impacts all of the Class members.

86.     Plaintiff and the Class have suffered harm as a result of these violations because they were misled into believing that they were buying an LED TV, not an LCD TV, and paid a monetary premium for these televisions that they otherwise would not have paid had the televisions been described accurately.  Plaintiffs and the Class have suffered injury in fact and have lost money or property as a result of Toshiba's false advertising and labeling, as alleged herein.

87.     Plaintiff and the Class are informed and believe and on that basis allege that Toshiba acted willfully or knowingly in falsely advertising and labelling it LED-lit LCD TVs.

88.     By reason of Toshiba's aforesaid violations of New York General Business Law § 350 et seq., Plaintiff and each member of the Class are entitled to recover the greater of their actual damages or $500 per television purchased, trebled damages, injunctive relief and their costs and attorneys' fees in filing and prosecuting this action and such other relief as provided by law.

CASE NO. _____

**COMPLAINT**

5856160.2

1                                             **PRAYER FOR RELIEF**

2         WHEREFORE, Plaintiff and the Class pray for judgment and relief as follows:

3         a.       An order certifying that this lawsuit is properly maintainable as a class action and

4 certifying Plaintiff as the representative of the Class;

5         b.       An injunction prohibiting Toshiba from advertising LED-lit LCD TVs as LED TVs

6 or LED HDTVs or LED televisions within the State of New York.

7         c.       An order requiring Toshiba to engage in a corrective advertising campaign that

8 informs the consuming public (within the State of New York) that so-called LED TVs are in fact

9 LCD TVs with an LED backlight.

10         d.       An order requiring Toshiba to re-label (or recall) all new LED-lit LCD TVs in the

11 possession of distributors or retailers or other resellers for resale in New York that do not contain a

12 clear and conspicuous disclosure that the television is an LCD TV with an LED backlight.

13         e.       For the First and Second Causes of Action only, restitution in an amount to be

14 determined at trial;

15         f.       Attorneys' fees and costs; and

16         j.       Such other and further relief as may be just and proper.

17

18                                      **DEMAND FOR JURY TRIAL**

19

20         Plaintiff demands a trial by jury of all issues properly triable thereby.

21

22                             RESPECTFULLY SUBMITTED,

23 DATED: February 21, 2014       By: /s/ Francis O. Scarpulla

24                                   Francis O. Scarpulla (41059)
                                  Judith A. Zahid (215418)

25                                   Patrick B. Clayton (240191)
                                  Zelle Hofmann Voelbel & Mason LLP

26                                   44 Montgomery Street, Suite 3400
                                  San Francisco, CA 94104

27                                   Telephone:     415-693-0700
                                  Facsimile:     415-693-0770

28

                                           29               CASE NO. _____

| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

Email:       fscarpulla@zelle.com
jzahid@zelle.com
pclayton@zelle.com

Jonathan Shub (237708)
Scott A. George *(Pro Hac Vice Appl. To Be Filed)*
Seeger Weiss LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Telephone:     215-564-2300
Facsimile:     215-851-8029
Email:       jshub@seegerweiss.com
sgeorge@seegerweiss.com

Hayward J. Kaiser (66365)
Mitchell Silberberg & Knupp LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064
Telephone:     310-312-2000
Facsimile:     310-312-3100
Email:       hjk@msk.com

Daniel R. Shulman *(Pro Hac Vice Appl. To Be Filed)*
Gregory R. Merz *(Pro Hac Vice Appl. To Be Filed)*
Kathryn J. Bergstrom *(Pro Hac Vice Appl. To Be Filed)*
Dean C. Eyler *(Pro Hac Vice Appl. To Be Filed)*
Gray Plant & Mooty
500 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone:     612-632-3000
Facsimile:     612-632-4444
Email:       daniel.shulman@gpmlaw.com
gregory.merz@gpmlaw.com
katie.bergstrom@gpmlaw.com
dean.eyler@gpmlaw.com

Attorneys for Plaintiff and the proposed class

CASE NO. _____
**COMPLAINT**

5856160.2